IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VOILÉ MANUFACTURING CORP., <br><br> Plaintiff, <br><br> vs. <br><br> LOUIS DANDURAND and BURNT MOUNTAIN DESIGNS, LLC, <br><br> Defendants. | ORDER and MEMORANDUM DECISION <br><br><br> Case No. 2:07-CV-396 TC |

## BACKGROUND

This motion for a preliminary injunction involves a dispute over U.S. Patent No. 6,877,759 (the "'759 patent.")  The '759 patent covers a ski binding with certain structural elements.  The '759 patent's specification generally describes a step-in binding for use in telemark skiing, a form of skiing where the heel of the ski boot is allowed to come off the ski.  Some, but not all, of the claims in the '759 patent are expressly directed at step-in ski bindings.  Step-in ski bindings allow a skier to simply place his or her boot in the binding to attach the boot to the binding.  Such bindings are contrasted with cable ski bindings, which require the skier to bend over and use his or her hands to use a cable to attach the boot to the binding.

Burnt Mount Designs, LLC ("Burnt Mountain") holds the '759 patent and markets the "Telebulldog" and the "lite dogz," step-in bindings based on the '759 patent.  (It appears that at least the "lite dogz" is also available with a cable attachment.)  Louis Dandurand is the president of Burnt Mountain and the original owner of the '759 patent.

Voilé Manufacturing Corporation ("Voilé") is also in the business of designing and marketing ski bindings. At issue in this case is Voilé's "Switchback" binding, a cable binding used for telemark skiing. Burnt Mountain contends that the Switchback binding infringes the '759 patent. Voilé apparently introduced the Switchback into the market in the Fall of 2007.

Before Voilé began to market the Switchback, it was contacted by Burnt Mountain. Burnt Mountain informed Voilé that it believed that the Switchback infringed the '759 patent, as well as U.S. Patent No. 7,210,698 (the "'698 patent"), another patent held by Burnt Mountain. The '698 patent is a continuation in part of the '759 patent. Burnt Mountain offered Voilé a license in these patents. Voilé refused, asserting that the Switchback did not infringe the patents because of differences between the Switchback and the patents and because Voilé believed that the patents were invalid.

On June 15, 2007, after several exchanges in which Burnt Mountain and Voilé attempted to convince one another of their relative positions on patent infringement, Voilé brought the present action. (Mr. Dandurand and Burnt Mountain were both named as defendants and are collectively referred to herein as "Burnt Mountain.") Voilé's complaint seeks a court declaration of the following propositions: that the Switchback does not violate the '759 or '698 patents; that those patents are invalid based on prior art; that Burnt Mountain engaged in inequitable conduct in obtaining the patents by not revealing prior art to the patent examiner; and that Voilé's selling the Switchback would not constitute unfair competition.

On September 7, 2007, Burnt Mountain answered Voilé's complaint and filed a counterclaim. In its counterclaim, Burnt Mountain asserts two causes of action. First, Burnt Mountain claims that the Switchback infringes the '759 patent. The second claim is for unfair competition. Burnt Mountain seeks damages, attorney fees, and an injunction prohibiting Voilé

from manufacturing, selling or offering for sale the Switchback.

Before the court is Burnt Mountain's motion for a preliminary injunction, which it filed on December 17, 2007.  Burnt Mountain seeks an injunction preventing Voilé from manufacturing, selling or offering the Switchback for sale or otherwise infringing the '759 patent.  Though Burnt Mountain brought two causes of action, it bases its request for injunctive relief on the patent infringement claim alone.[1]

Burnt Mountain has shown a likelihood of success on the merits on its contention that the Switchback infringes claims 23-25 of the '759 patent.  Burnt Mountain, however, has failed to prove that it will suffer irreparable harm if it is not granted its proposed injunction.  Accordingly, Burnt Mountain's motion for a preliminary injunction is DENIED.

## **ANALYSIS**

To obtain injunctive relief, Burnt Mountain must establish: (1) a reasonable likelihood of success on the merits of its infringement claim; (2) irreparable harm if the proposed injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) that the injunction will have a favorable impact on the public interest.  See Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).  To demonstrate a likelihood of success on its patent infringement claim, Burnt Mountain must show that the '759 patent is valid and that it is likely to prove that Voilé is infringing it.  See Genentech, Inc. v. Novo Nordisk, A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997).  "Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success

---

[1]Voilé brought motions to strike the affidavits of Christopher A. Brown. (Dkt. Nos. 24 & 30.)  Burnt Mountain proffered Dr. Brown's affidavits to support its construction of the claims of the '759 patent.  As the court explained at the hearing on this motion, it will not consider expert testimony in its initial claim construction, which is a legal matter.  Voilé's motions are therefore DENIED as moot.

on the merits and irreparable harm." Amazon.com, 239 F.3d at 1350 (citations omitted).

I.      **Likelihood of Success on the Merits**

Burnt Mountain has asserted that the Switchback literally infringes claims 23-25 and claims 38-42 of the '759 patent. Claims 23 and 38 are independent claims, with the other claims dependent on them. When considering a motion for preliminary injunctive relief in a patent infringement dispute, the court is not required to engage in a comprehensive and final claim construction. See Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("[T]he trial court has no obligation to interpret [a] claim . . . conclusively and finally during a preliminary injunction proceeding."). The court finds that Burnt Mountain is unlikely to show infringement of claims 38-42, but is likely to show infringement of claims 23-25.

At the hearing, a demonstration of the Switchback showed that it lacks an element of claim 38. Specifically, the Switchback's overlying member does not appear to clamp the sole of the ski boot against the fixed position base. (See United States Patent Number 6,887,759 April 12, 2005 (the "'759 Patent") at Claim 38, attached as Ex. 18 to Memo. in Opp'n.) Accordingly, Burnt Mountain is not likely to show infringement of claim 38 or of claims 39-42, which depend on claim 38. See Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994) ("[F]or a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device."). This leaves claims 23-25.

Burnt Mountain has made a preliminary showing that the Switchback has every element of claim 23. In response, Voilé raised two defenses in support of its contention that the Switchback does not infringe claim 23. (Voilé makes no argument that the Switchback does not meet the additional elements of dependent claims 24 and 25.)

First, Voilé would have the court read the phrase "locked and released positions" in claim

23 to refer to a means for locking in or releasing the ski boot from the binding. (See '759 Patent at Claim 23) ("[S]aid boot support carriage having locked and released positions.").) The Switchback binding does not have such a mechanism. On the other hand, Burnt Mountain advocates a reading of that term as referring to whether the boot support carriage itself is fixed to or released from the base. The Switchback's boot support carriage does have such positions.

Voilé supports its proposed construction by reference to the '759 patent's specification, its other claims, and its prosecution history. But the first place the court looks to interpret a claim is the language of the claim itself. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'") (citations omitted). Claim 23 makes no mention of locking or releasing the ski boot. Instead, it refers to the "boot support carriage" itself having "locked and released positions." While a patent's intrinsic evidence should be used to interpret a claim, such evidence may not be used to import limitations into the claim. See Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1370 (Fed. Cir. 2008). But limiting claim 23 to step-in bindings, as Voilé would have the court do, amounts to adding such a limitation. Moreover, Burnt Mountain points to other intrinsic evidence that supports its reading of the phrase "locked and released position."

Though it is conceivable that a more thorough claim construction hearing or a trial on the merits might yield a different construction, at this stage, Burnt Mountain appears to have the winning argument. Consequently, the Switchback does appear to have "locked and released positions" as defined in claim 23.

Second, Voilé points out that the Switchback's boot support members and cross member are made out of one piece of metal. Voilé argues that this precludes the court from finding that

the Switchback has "a pair of separated boot members" with a pivot that defines the spacing between the two. (See '759 Patent, claim 23.) But this is a difference without a distinction. The Switchback has a pair of boot support members that are separate from each other and must be spaced in a way that the pivot can engage both sides. Whether it is made of one or three pieces of metal does not affect the structure itself. Moreover, the '759 patent's specification teaches that the boot support members and the cross member may be formed from one piece of metal. (See id. at Column 7, lines 2-4.)

Voilé also contended that the '759 patent is invalid for obviousness and inequitable conduct. A resolution of both of these assertions ultimately depends, however, on a determination of the state of the relevant art: here, ski binding design. Voilé has not presented any evidence to establish this threshold finding, and the court therefore has no basis to make any findings in either party's favor on these issues.

**II.     Irreparable Harm**

Having found that Burnt Mountain has shown, at this stage, a likelihood of success on the merits, the court moves on to the question of whether Burnt Mountain will suffer irreparable harm unless an injunction is granted. Until recently, it was clear that under Federal Circuit precedent, a patentee seeking a preliminary injunction was entitled to a presumption of irreparable harm upon proving a likelihood of success on the merits of infringement. See, e.g., Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir.1994). This presumption was "a procedural device which shift[ed] the ultimate burden of production on the question of irreparable harm [from the patentee] onto the alleged infringer." Id. at 1556. Burnt Mountain relies primarily on this presumption to argue that it meets the irreparable harm prong here.

This well-established rule, however, was called into doubt by the United States Supreme

Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S. Ct. 1837 (2006). In eBay, the Court rejected the Federal Circuit's "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." Id. at 1839 (citation and internal quotation marks omitted). The Court reasoned that such an essentially *per se* rule based on one factor alone, *i.e.* success on the merits, was inconsistent with the equitable discretion of the district courts in deciding whether to grant injunctions. See id. at 1840-41. By eliminating the Federal Circuit's presumptive rule in the permanent injunction context, eBay raised serious questions about whether irreparable harm should be presumed when probable infringement is shown in a preliminary injunction. See also Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 544-45 (1987) (holding that presumption of irreparable harm was "contrary to traditional equitable principles" in considering preliminary injunctions based on federal environmental protection statute).

The Federal Circuit has yet to squarely consider whether the presumption survived eBay. In Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1334 (Fed. Cir. 2006), decided shortly after eBay, the court implied that the presumption might still apply. There, the court stated that because a patentee had not established a likelihood of success on the merits of patent infringement, it was "no longer entitled to a presumption of irreparable harm," suggesting that the opposite would be true. Id. at 1347. Although Abbott Labs cited eBay, it did not address eBay's potential impact on the presumption.

Later, in Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368 (Fed. Cir. 2006), the court noted an alleged infringer's argument that eBay had eliminated the presumption in the preliminary injunction context. See Sanofi-Synthelabo, 470 F.3d at 1383 n.9. The court declined to address the issue because the patentee had otherwise shown irreparable harm. See id.

Despite the lack of clear direction from the Federal Circuit, the majority of district courts to directly analyze the issue have held that eBay did away with the presumption of irreparable harm in preliminary injunction cases involving patents. See, e.g., Precision Automation, Inc. v. Technical Servs., Inc., 2007 WL 4480739 at *3 (D. Or. Dec. 14, 2007) (holding that eBay eliminated presumption of irreparable harm in preliminary injunction context); Tiber Labs., LLC v. Hawthorn Pharms., Inc., 527 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007) ("This Court agrees that eBay does not leave room for a presumption of irreparable injury in patent cases, whether raised at the preliminary or permanent injunction phase."); Sun Optics, Inc. v. FGX Int'l, Inc., 2007 WL 2228569 at *1, *3 (D. Del. Aug. 2, 2007) (holding that presumption of irreparable harm in preliminary injunction analysis did not survive eBay); Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F. Supp. 2d 871, 881 (D. Minn. 2007) (same); Chamberlain Group v. Lear Corp., 2007 WL 1017751 at *5 (N.D. Ill. March 30, 2007) vacated on other grounds at ___ F.3d ___, 2008 WL 426497 (Fed. Cir. Feb. 19, 2008) (same); Canon Inc. v. GCC Int'l Ltd., 450 F. Supp. 2d 243, 254 (S.D.N.Y. 2006) ("Consistent with those equitable principles [in eBay], the [preliminary injunction] movant must demonstrate the likelihood of irreparable injury in the absence of a grant of the requested injunction."); z4 Techs., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006) (holding that eBay eliminated irreparable harm presumption in permanent injunction context). But see Christiana Indus. v. Empire Elecs., Inc., 443 F. Supp. 2d 870, 884 (E.D. Mich. 2006) (holding that eBay did not eliminate presumption).

The court now joins these district courts and holds that eBay eliminated the presumption of irreparable harm in preliminary injunction cases. This conclusion means that the burden is on Burnt Mountain to submit sufficient evidence of irreparable harm. As discussed below, it did not do so. Moreover, even if the presumption survived eBay, the court notes that the presumption

may be rebutted. See Reebok, 32 F.3d at 1556. The court finds that Burnt Mountain's willingness to license the '759 patent overcomes any presumption of irreparable harm here.

The essence of showing irreparable harm is demonstrating an injury that money damages cannot sufficiently remedy. See, e.g., High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995). Here, Burnt Mountain relies on statements by Mr. Dandurand in his second affidavit to describe the harms it would suffer if an injunction did not issue. Mr. Dandurand states that the Switchback's presence in the market devalues and demoralizes his company, makes licensing of the '759 patent nearly impossible, and erodes the market share for his company's Telebulldog and lite dogz touring bindings. Mr. Dandurand also cites diverted resources from research and development to this lawsuit.

Mr. Dandurand's conclusory affidavit is not enough to demonstrate irreparable harm here. Courts require more than unsupported factual conclusions to support such a finding. See, e.g., Sanofi-Syntholabo, 470 F.3d at 1381 (upholding district court's finding of irreparable harm based on "substantial evidence"); Precision Automation, 2007 WL 4480739 at *4-*6 (finding that patentee seeking preliminary injunction had not offered substantial evidence of irreparable harm). The present case illustrates why this is so. Mr. Dandurand does not make clear to the court how Burnt Mountain is being devalued by the sale of the Switchback. Nor does Mr. Dandurand point to any potential licensees who have refused to enter agreements because of the presence of the Switchback. And there is no evidence before the court regarding the sales of either Burnt Mountain's bindings or of the Switchback, making it impossible to determine whether or to what extent Burnt Mountain's market share has been eroded.

At bottom, Burnt Mountain complains about a probable loss in market share. But this type of damage alone does not amount to irreparable harm. See, e.g., Nutrition 21 v. United

States, 930 F.2d 867, 871-72 (Fed. Cir. 1991).  Nor has Burnt Mountain pointed to any authority holding that litigation-related expenses could be considered irreparable harm.  In any event, granting an injunction here is not the same as ending the lawsuit.  Finally, citing the loss of potential licensees cuts against Burnt Mountain, as doing so suggests that the harm is primarily money-related.

Moreover, even if Burnt Mountain had the advantage of a presumption of irreparable harm on its side, this presumption would be overcome here by Burnt Mountain's willingness to grant Voilé a license.  See High Tech Med. Instrumentation, 49 F.3d at 1557 (holding that a patentee's "apparent willingness to grant a license" showed a "willing[ness] to forgo its patent rights for compensation" and worked, along with a long delay in filing for an injunction, to negate a finding of irreparable harm) (citing T.J. Smith & Nephew Ltd. v. Consolidated Med. Equip., Inc., 821 F.2d 646, 648 (Fed. Cir. 1987)).

For these reasons, Burnt Mountain has failed to show that the irreparable harm prong has been satisfied.  Accordingly, the court will not exercise its equitable discretion to grant a preliminary injunction here.  See Amazon.com, 239 F.3d at 1350 (preliminary injunction movant must show both infringement and irreparable harm for injunction to issue.)

### III.   Other Preliminary Injunction Factors

Although Burnt Mountain's failure to show irreparable harm precludes an injunction, the court briefly addresses the remaining factors below.

#### A.   Balance of the Harms

Burnt Mountain correctly points out that harm to Voilé may be discounted if the Switchback is ultimately found to infringe the '759 patent, as Voilé had notice of that possibility since before it began to sell the Switchback.  See Sanofi-Synthelabo, 470 F.3d at 1383.  This

factor tips slightly in favor of Burnt Mountain, then, since it appears likely that the Switchback does infringe. If infringement is not found, however, the parties have not given the court any factual basis to determine the extent of possible harm to either one.

    B.    <u>Public Interest</u>

The Federal Circuit has traditionally found that the public interest prong favors the party that will likely prevail on the patent infringement claim. <u>See</u> <u>Abbott Labs. v. Andrx Pharms., Inc.</u>, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("Although the public interest inquiry is not necessarily or always bound to the likelihood of success on the merits . . . we agree . . . that the public interest is best served by enforcing patents that are likely valid and infringed. As Abbott did not establish a likelihood of success on the merits, we conclude that the public interest is best served by denying the preliminary injunction.") Since it looks like Burnt Mountain will be able to prove infringement, this factor favors Burnt Mountain.

It should be noted, however, that this is merely a holding by default, since neither party argued anything but the default rule. If infringement is not shown, there is no basis to find that this prong favors either party.

## **ORDER**

For the reasons set forth above, Burnt Mountain's motion for a preliminary injunction is DENIED and Voilé's motions to strike are DENIED as moot.

IT IS SO ORDERED this 14th day of March, 2008.

                BY THE COURT:

                *Tena Campbell*

                TENA CAMPBELL
                Chief Judge